### TRUMAN CHARLES *vs.* JOHN DUNBAR.

A first mortgagee who makes an entry for condition broken, according to the provis-ions of the Rev. Sts. *c.* 107, § 2, but permits the mortgagor to remain in possession as before, without accounting for rents and profits, does not render himself liable to account with the second mortgagee for the rents and profits, although he makes such entry for the purpose of preventing the creditors of the mortgagor from attach-ing the crops growing on the mortgaged premises.

BILL in equity to redeem mortgaged land.

The plaintiff alleged, in his bill, that John Fitts mortgaged

the land to the President, &c. of the Boston Bank, on the 15th of December 1803, to secure the payment of $500 in one year, with interest; that the said bank, on the 10th of March 1831, assigned the mortgage and debt to the defendant; that said Fitts, on the 26th of February 1824, conveyed the same land, subject to said mortgage, to John Fitts, jr., who mortgaged the same, on the 29th of May 1829, to William S. Wild, to secure the payment of $600 in one year; that said Wild, on the 28th of August 1837, assigned said last mentioned mortgage and debt to the plaintiff, who thereby became entitled to said land, subject to the mortgage first above mentioned; and he offered to pay the defendant the sum due on that mortgage.

The answer of the defendant admitted the facts averred in the bill, and also the plaintiff's right to redeem on payment of the sum justly due on the first mentioned mortgage. This sum, the plaintiff averred to have been $297.03, at the time said mortgage was assigned to him, (March 10th 1831), which sum, with interest from that time, he claimed of the plaintiff on redemption.

The court appointed an auditor to state an account of the sum due to the defendant on the mortgage assigned to him by the Boston Bank. The report of the auditor was as follows:

The Boston Bank, at the June term, 1830, of the court of common pleas in this county, recovered judgment for possession of the said mortgaged premises. Two writs of possession were sued out upon said judgment, the last of which was dated December 28th 1830, but neither of them was ever served. On the 10th of March 1831, said bank assigned to the defendant their said mortgage, the debt secured by it, said judgment for possession, and said writ of possession, which last issued. At the time of said assignment, there was due on said mortgage $287.66, which the defendant paid to said bank, together with the sum of $9.50 for the costs recovered in said judgment for possession.

Nothing has been paid to the defendant on said mortgage since it was assigned to him, unless the court shall be of opinion, on the facts hereafter stated, that he ought to account for the rents and profits of the mortgaged premises since the 3d of December 1836.

On the 26th of February 1824, the said Fitts, the mortgagor, conveyed the mortgaged premises, subject to the said mortgage to the Boston Bank, and certain other real estate, to his son, John Fitts, jr. The consideration of said conveyance was the undertaking of said Fitts, jr. to support his father and mother during their lives, and to pay $ 1200, in different proportions, to several of his brothers and sisters. Under this conveyance, said John Fitts, jr. entered into possession of the estate thereby conveyed — including the mortgaged premises — and has continued in possession of said premises since the date of said conveyance, unless the court shall be of opinion, upon the facts and circumstances hereafter stated, that he abandoned said possession.

At the time when said John Fitts, jr. received the conveyance aforesaid, he mortgaged back the estate to his father to secure the support of his father and mother and the payment of said $ 1200; and previously to 1831, he had become embarrassed, and had executed sundry mortgages of his interest in said estate, subsequently to the said mortgage given to his father.

The defendant's wife is sister of said John Fitts, jr., and there was testimony before the auditor that "the defendant was induced to purchase the mortgage of the Boston Bank, so that said John Fitts, jr. need not be disturbed in the possession of that part of said premises embraced in that mortgage, and thus be enabled to support his mother, who was then alive, from the crops and proceeds of said farm : That from the time when the defendant became assignee of the mortgage to the Boston Bank, till December 3d 1836, said John Fitts, jr. continued to occupy said premises, but that the crops which he raised were constantly liable to attachment by his creditors, and in some instances had been attached : " That on said 3d of December, said John Fitts, jr. gave the defendant possession of said premises, for the purpose of preventing the creditors of said John from attaching the crops ; and that a certificate of the defendant's taking peaceable possession was indorsed on the said assigned mortgage, signed by two persons as witnesses — which certificate was recorded in the registry of deeds on the 2d of

January 1837 : That no agreement was made as to said John's accounting with the defendant for the rents and profits, but that it was "understood that he should occupy the farm in the same manner as he had done before, and that the taking of possession was for the purpose of saving the crops from attachment."

The auditor stated an account, and referred to the court the question whether the said rents and profits should be accounted for by the defendant.

This case was argued at the last October term.

*Washburn*, for the plaintiff.

*Merrick*, for the defendant.

DEWEY, J.   The plaintiff insists that the defendant ought to account with him for the rents and profits of the mortgaged premises, after December 3d 1836.

It appears by the facts stated by the auditor, that no rents or profits came to the hands of the defendant ; the actual occupation having continued in the mortgagor.

The alleged liability of the mortgagee to account for the rents and profits arises, therefore, not from the fact that he has received them, but is supposed necessarily to result from his relation to the premises, after the formal possession taken by him, and the record, in the registry of deeds, of his entry for breach of condition.   The position assumed is, that the mortgagee, by taking such measures, *ipso facto* makes himself accountable for reasonable rents and profits.   Is this a correct view of the matter ?

The language of the Rev. Sts. *c.* 107, requiring the mortgagee to account for rents and profits, would seem to embrace cases only of actual possession ; and in the case of a mortgagor permitted by the mortgagee to continue in possession and to take the profits, after a formal entry by the mortgagee, equity would clearly forbid that the mortgagee should be held to account for them with the mortgagor.   Does the law require a different rule when applied to the case of one holding as a second mortgagee, by a conveyance from the mortgagor ?   Where one, who has made two mortgages of his estate, is left in possession by both the first and second mortgagee, and takes the

rents and profits without disturbance from the second mortgagee, clearly so long as no formal entry for condition broken is made, the first mortgagee is not liable to account for rents and profits, in favor of the second mortgagee. This being so, we think a mere formal entry, avowedly to foreclose, but in fact leaving the mortgagor in possession and enjoying the profits, will not, of itself, charge the first mortgagee to account with the second. The second mortgagee may take the possession, as against that of the mortgagor, if the latter holds in his own right, and thus exclude him and take the rents and profits to his own use. If such second mortgagee should be prevented from making such entry, by the previous entry and actual occupation of the first mortgagee, or by his claiming to exclude the second mortgagee by virtue of the superior title conferred by the first mortgage and the occupation under it ; then he would be held to account, in favor of the second mortgagee, for the rents and profits. But it does not appear that the second mortgagee, in the present case, made any attempt to enter on his own account.

A second mortgagee has also full power, by paying off the first mortgage and taking the entire control of the mortgaged premises, as against the mortgagor, to protect himself against any apprehended injury from the neglect of the first mortgagee to take and continue actual possession, so as to render the income of the premises available towards the discharge of the debt secured by the first mortgage. This would effectually secure him against any collusion between the first mortgagee and the mortgagor.

The only difficulty, if any, that exists in this case, arises upon the question, whether the formal possession taken, and the record thereof made in the registry of deeds, estop the defendant to show that he was not in the actual possession. If the defendant is estopped, it must be either upon the ground that the possession, after such entry and record, must necessarily, in legal contemplation, continue in the mortgagee until foreclosure is perfected, or the mortgage debt is paid ; or on the ground that the defendant has, by his own act, misled the plaintiff, (the second mortgagee) and induced him to lie by and forbear to

make an entry on his own account, or to take any other measures to secure to himself the benefit of an appropriation of the rents and profits towards the payment of the mortgages.

It is clear that the first of these grounds cannot be maintainea. Possession may be abandoned by a mortgagee, either by his own voluntary act of an unequivocal character, or by an arrangement between him and the party holding the equity of redemption. What would be the effect of such relinquishment of possession upon the foreclosure, it is not necessary now to consider.

The other ground presents, perhaps, greater difficulty, and the argument is not without its weight. The liability of the mortgagee to account for rents and profits arises under the Rev. Sts. *c.* 107, § 15 : " If the mortgagee, or any person under him, has had possession of the premises, he shall account for the rents and profits thereof." The party is not charged by reason of his formal entry, &c. but on account of his actual possession. And although the formal entry is in itself a strong circumstance tending to show that the party was holding a continued possession under such entry ; yet as such entry might well have been made, and the possession have been abandoned without fraud, we think that a mortgagee cannot, by reason of such entry, be treated as one who by his conduct induced another to part with his property, or to forego the enforcement of his rights ; and that it was the duty of the second mortgagee, if he would charge the first with the rents and profits in such a case, to take further steps, by attempting to enter under his own mortgage, or by tendering the debt due to the first mortgagee. If, upon such attempt to enter, he should be prevented by the first mortgagee, or any person claiming under him, then clearly, as before mentioned, the first mortgagee would be chargeable with the rents and profits : But without some assertion or manifestation of having the actual possession, and exercising his rights, to the exclusion of others wishing to take possession, we think he is not, by the mere force of the entry and the record thereof, to be taken to be in the actual possession and estopped from showing that, in fact, he permitted the mortgagor to continue in the possession and improvement of the mortgaged premises, taking the profits thereof wholly to himself.

Nor do we think that the purpose of the formal entry, namely, to aid the mortgagor in withholding from the attachment of other creditors the produce of the farm, affects the present question. If the possession was not in fact in the mortgagee, the creditors might have made valid attachments of the produce of the farm. They did not interfere, however ; and we think the purpose of the first mortgagee's entry does not enlarge the rights of the second mortgagee as against the first, nor authorize the second to charge the first with the use and income of the premises during the time that the mortgagor actually retained the possession.